IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

BOYKIN JONES, #115 033             *

    Plaintiff,                         *

    v.                                 *     2:08-CV-220-MHT
                                             (WO)
LEON FORNISS, WARDEN, *et al*.,    *

    Defendants.                        *

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Boykin Jones, an Alabama prisoner incarcerated at the Staton Correctional Facility, in Elmore, Alabama, files this *pro se* 42 U.S.C. § 1983 action alleging a violation of his constitutional right to be free from excessive force. Specifically, Plaintiff complains that Nurse Nikkita Shambray[1] subjected him to an unprovoked and malicious use of excessive force. Plaintiff further complains that Warden Leon Forniss failed to investigate the matter. Plaintiff requests that Defendants be "barred" from their jobs and that he be awarded punitive damages for mental stress as well as the serious physical injury he sustained from Defendant Shambray's use of force. (*Doc. No. 1*.)

In accordance with the orders of the court, Defendants filed answers, special reports, a supplemental special report, and supporting evidentiary material in response to the allegations contained in the complaint. The court provided Plaintiff an opportunity to file

---

[1] Nurse Nikkita Shambray was incorrectly identified by Plaintiff as "Nitka Shambary."

a response to the arguments presented by Defendants.

Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat Defendants' special reports, as supplemented, as motions for summary judgment  The court informed Plaintiff that Defendants' special reports, may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. (*See Doc. No. 23*.)  Plaintiff filed responses to the special reports filed by Defendants. This case is now pending on Defendants' motions for summary judgment. Upon consideration of the motions, Plaintiff's opposition to the motions, and the supporting and opposing evidentiary materials, the court concludes that Defendant Forniss's motion for summary judgment on Plaintiff's claim against him is due to be granted, and Defendant Shambray's motion for summary judgment on Plaintiff's excessive force claim is due to be granted in her official capacity but denied in her individual capacity.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules. These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive Defendants' properly supported motion for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (a plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the

defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. SouthPlaintiff Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing

summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In the present cause of action, Plaintiff has demonstrated a genuine issue of material fact in order to preclude entry of summary judgment on his § 1983 claim for excessive force against Defendant Shambray in her individual capacity.  Plaintiff has not, however,  demonstrated

a requisite genuine issue of material fact in order to preclude summary judgment with respect to his claim against Defendant Forniss.

## II.  DISCUSSION

*A.  The Complaint*[3]

On October 13, 2007 medical personnel called Plaintiff to the health care unit to receive a diabetic finger stick. When he arrived there were three nurses present, one correctional officer (Officer Lewis), and inmate Onterous Porter.  One of the nurses, Nurse Sanders, confronted Plaintiff about a medical grievance he filed against her for her refusal to give him his medication. Plaintiff states he went on to receive his finger stick and dose of medication.  As he was leaving the healthcare unit, Nurse Sanders told him to come back and pick up the test strip that had his blood on it from the finger stick. As he came back in the room, Nurse Shambray referred to him as an "old white head man" while referencing the grievance he wrote against her friend, Nurse Sanders. As Plaintiff bent down to pick up the strip, Nurse Shambray rushed over and proceeded to kick Plaintiff on the side of his leg and foot and punch his upper back with her fist "as hard as she could." Officer Lewis shouted to Nurse Shambray to stop. (*Doc. No. 1*.)

At approximately 9 p.m. that same day, Plaintiff's neck and back began to hurt badly so he reported the incident with Nurse Shambray to Lieutenant Cooper. When asked by

---

[3] At this stage of the proceedings, the court takes the facts alleged by Plaintiff in his complaint as true and construes them in the light most favorable to him.  *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," ... and 'resolve all reasonable doubts about the facts in favor of the non-movant.' ... Moreover, the court must avoid weighing conflicting evidence or making credibility determinations....").

Lieutenant Cooper why he waited so long to report the incident, Plaintiff states that he thought Officer Lewis was going to report it since he had witnessed the incident. Plaintiff was placed in segregation pending an investigation into his allegations against Nurse Shambray and remained there until 10 p.m. the next day, when Lieutenant Copeland told Plaintiff to drop the matter because there was no truth to it. On October 18, 2007 Lieutenant Cooper advised Plaintiff that he would be receiving a disciplinary notice for lying to a correctional official. (*Doc. No. 1*.)

## B. *Excessive Force*

### *i. Official Capacity Claims*

To the extent Plaintiff that seeks to bring this action against Defendants in their official capacities, they are immune from monetary damages. "[A] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear to the court that Defendants are state officials

entitled to sovereign immunity under the Eleventh Amendment for all claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, Defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### ii. Individual Capacity Claim

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). In *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), the Eleventh Circuit explained that whether a defendant's use of force is excessive, and thus violative of an inmate's right to be free from cruel and unusual punishment, "depends on whether the [defendant's] act 'shocks the conscience,' *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force " 'was applied ... maliciously and sadistically for the very purpose of causing harm.' " *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the

threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002).

In *Hudson*, the Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. *Id*. 503 U.S. at 9; *but see Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327). *See also Smith v. Mensinger*, 293 F.3d 641, 649 (3rd Cir. 2002) (considering the *de minimis* nature of injuries is an issue of fact to be resolved by the fact finder based on the totality of the evidence); *Brooks v. Kyler*, 204 F.3d 102, 103 (3rd Cir. 2000) (holding that there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to state an excessive force claim).

Notwithstanding that a *de minimis* use of force will rarely suffice to state a constitutional claim, a plaintiff is not required to show the application of force resulted in serious injury. *Hudson*, 503 U.S. at 8. Rather, the key inquiry under *Hudson* is whether the

alleged conduct involved "unnecessary and wanton infliction of pain." *Id*. Thus, in analyzing Plaintiff's allegation of excessive force, this court looks at three factors – the objective nature of the force used, the resulting harm, and the subjective intent of the officers. *See Wilkins v. Gaddy*, ___ U.S. ___, 130 S.Ct. 1175, __ L.Ed.2d ___ (2010); *Hudson*, 503 U.S. at 7. The *Wilkins* Court emphasized that its holding in *Hudson* did not stand for the proposition that a "certain quantum of injury [needed to be] sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Wilkins*, 130 S.Ct. at 1178 (quoting *Hudson*, 503 U.S. at 7). Further, the *Wilkins* Court noted that requiring a showing of injury would permit any punishment, "no matter how diabolic or inhuman," absent some quantum of injury. *Id*. (quoting *Hudson*, 503 U.S. at 9). The Court did not want "[a]n inmate who is gratuitously beaten by guards . . . [to] lose his ability to pursue an excessive force claim merely because he ha[d] the good fortune to escape without serious injury." *Wilkins*, at 1178-79. The absence of serious injury, however, is not irrelevant. The extent of injury could indicate whether the use of force was thought to be necessary, and it could provide an indication of the amount of force actually applied. *See Wilkins*, 130 S.Ct. at 1178. The *Wilkins* Court further stated, however, that "a court ultimately should decide an excessive force claim "based on the nature of the force rather than the extent of the injury." *Id.* at 1177.

      Defendant Shambray does not dispute that she ordered Plaintiff to pick up his finger stick and that he did so while "moaning and groaning." She denies any further incident or interaction with Plaintiff. (*Doc. No. 22, Exh. A.*)

11

Lieutenant Terry Cooper's prepared an incident report in response to Plaintiff's allegation of assault against Nurse Shambray. Lt. Cooper's report reflects the following:

> On 10-13-2007, at approximately 8:56 p.m., Inmate Boykin Jones . . , entered Staton Correctional Facility B-Dormitory cubicle and informed Terry Cooper, Correctional Lieutenant, that he (Inmate Jones) had been physically assaulted by LPN Nikkita Shambray, while in Staton Correctional Facility infirmary. Lt. Cooper asked inmate Jones when did this alleged physical assault occur? Inmate Jones replied "at approximately 2:45 p.m., on 10-13-2007." Lt. Cooper asked inmate Jones why did he (Inmate Jones) wait until approximately 9:00 P.M., to report this alleged assault? Inmate Jones replied "because I was not hurting earlier."  Lt. Cooper asked inmate Jones were their anyone else present, when this alleged physical assault occurred? Inmate Jones replied yes, Officer Roosevelt Lewis, LPN Katrina Jones, LPN Marquita Sanders and Inmate Ontourus Porter . . . At approximately 9:02 P.M., Lt. Cooper reported this alleged assault to Captain Larry Floyd the on-call official for Staton Correctional Facility, via telephone.  At approximately 9:10 P.M., Lt. Cooper questioned Officer Lewis in reference to Inmate Jones accusations, via telephone. Officer Lewis denied having any knowledge of inmate Jones accusations. Lt. Cooper advised Officer Lewis to write a statement to confirm or deny inmate Jones accusations. (See attached statement). At approximately 9:12 P.M., Lt. Cooper informed Nurses Jones, Shambray and Sanders of inmate Jones accusations via telephone, and advised Nurses Jones, Shambray and Sanders to write statements to confirm or deny inmate Jones allegations (See attached statements).  At approximately 9:20 P.M., Lt. Cooper instructed inmate Porter to write statements to confirm or deny inmate Jones allegations (See attached statement).[4]  At approximately 9:45 P.M., Lt. Cooper escorted inmate Jones to the infirmary to be examined (See attached emergency medical report). At approximately 10:03 P.M., inmate Jones was placed into State Correctional Facility holding unit, cell 3A, pending further investigation into this incident. No further action taken at this time.

(*Doc. No. 15, Exh. 2 at pgs. 3, 7-12.*)

---

[4] In their statements to correctional officials, Nurse Sanders and Nurse Jones stated that after Nurse Shambray told Plaintiff to pick up a test strip that had fallen on the floor, he commented that this was a job for the cleaning crew but nonetheless did as he was directed. Inmate Porter stated that Plaintiff had lied and that he did not see anyone do anything to Plaintiff. Officer Lewis stated that at no time during his tour of duty on October 13, 2007 from 2:00 p.m. to 10 p.m. did he witness Plaintiff get hit by anyone. (*Doc. No. 15, Exh. 2 at pgs. 7-12.*)

Captain Edward Robinson conducted an investigation into Plaintiff's claim against Defendant Shambray. In addition to interviewing Plaintiff, Captain Robinson interviewed the individuals whom Plaintiff indicated had witnessed the incident including Nurse Sanders, Nurse Jones, Officer Lewis, and inmate Porter. Captain Robinson also asked these witnesses to give a written statement regarding Plaintiff's allegation. Captain Robinson's investigation found that all the persons named by Plaintiff as having witnessed the assault denied that it occurred. In his October 18, 2007 written memo prepared for Deputy Warden Barrett regarding Plaintiff's allegation against Nurse Shambray, Captain Robinson stated that there was no evidence to substantiate or support Plaintiff's allegation of an assault. Nonetheless, Captain Robinson indicated in his written report that he had again attempted to interview Plaintiff on October 17, 2007 along with Lieutenant Eddie Browning. Captain Robinson's report reflects that Plaintiff told him that "he wanted to drop the allegation because everyone thought he was telling lies on the Nurse." Defendant Forniss received a copy of Captain Robinson's report of his investigation into Plaintiff's assault allegation. (*Doc. No. 15, Exh. 2, at pgs. 5-12.*)

Plaintiff's body chart reflects that he was examined by medical personnel on October 13, 2007 at approximately 9:00 p.m. Medical personnel found no sign of any skin impairment or change to the integrity of Plaintiff's skin in response to his allegation that he had been kicked and hit by Nurse Shambray. Plaintiff was released to the custody of correctional officials in satisfactory condition. (*Doc. No. 15, Exh. 2.*) On October 15, 2007, Plaintiff returned to the infirmary complaining that his back had gone out on him and

13

explaining that a nurse had hit and kicked him on his back. (*Doc. No. 35, Attachment at pg. 4.*) Medical personnel found no bruising to Plaintiff's upper or lower extremities nor to his front or back trunk area. (*Id.*) A raised area was noted on Plaintiff's left lower anterior leg but otherwise all of his skin was noted as intact. (*Id.*) Plaintiff was given a two-day prescription for motrin (400 mg.) and directed to return to the infirmary if his problem worsened. (*Id.*)

It is questionable whether Plaintiff suffered anything more than minor injuries as a result of Defendant Shambray's alleged conduct, but the injuries he received are only one factor for consideration. When considering the objective component of an excessive force claim, courts must look to the nature of the force used, *i.e.*, whether it was "nontrivial," not the extent of the injury sustained. *Wilkins*, 130 S.Ct. at 1179 & n.2. As explained, excessive force "necessarily excludes . . . *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted). While the absence of serious injury is relevant to an Eighth Amendment inquiry, it does not end this inquiry. *Hudson*, 503 U.S. at 7; *Skrtich*, 280 F.3d at 1304 n.8, citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986). The court must also consider the need for the application of force, the amount of force exerted, the threat reasonably perceived by the official and any efforts to temper the severity of the forceful response. *Skrtich*, 280 F.3d at 1305 n.9.

To carry his summary judgment burden, Plaintiff presents evidence that he was

physically assaulted by Defendant Shambray without reason or provocation.[5] Plaintiff states that as he knelt down to the ground to pick up his test strip, Nurse Shambray "rushed" him and proceeded to kick and hit him about his body. Defendant Shambray denies the allegations made against her. Moreover, Defendant Shambray argues that the evidence presented, including Plaintiff's medical records and the prison's investigations into incident, support her version of events over Plaintiff's evidence which she argues is self-serving and unsubstantiated. (*See Doc. No. 22.*)

While the parties' affidavits contradict each other and Plaintiff's medical records fail to show a physical injury or an immediate complaint of injury following the altercation, as noted, the general rule the court is required to follow when considering a motion for summary judgment is that it must view the evidence in a light most favorable to the non-movant. *Skritch*, 280 F.3d at 1299. Further, the Supreme Court has made clear that the core inquiry in an excessive force allegation focuses on the force exerted, not the extent of the injury sustained. *Wilkins*, 130 S.Ct. at 1179 & n.2; *see also Wright v. Goord*, 554 F.3d 255, 269-270 (2nd Cir. 2009) ("[O]ur Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight.... [T]he absence of any significant injury to [the plaintiff] does not end the Eighth Amendment inquiry, for our standards of decency are violated even in the absence of such

---

[5]Plaintiff's sworn complaint, to the extent it complies with the requirements of Fed.R.Civ.P. 56(e), may serve as competent summary judgment evidence. *See Barker v. Norman*, 651 F.2d 1107, 1114-15 (5th Cir. 1981). Plaintiff also submitted affidavits in support of his claims in his opposition to Defendants' dispositive motions. (*See Doc. Nos. 27, 39.*)

injury if the defendant's use of force was malicious or sadistic"); *Serna v. Colo. Dep't. of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006) (when there is no legitimate purpose for an official's conduct, malicious and sadistic intent may be inferred from their conduct alone). While the medical and prison records may be relevant to the Plaintiff's credibility, credibility determinations are inappropriate on summary judgment. *Anderson* 477 U.S. at 255.

Defendant Shambray argues that she is entitled to qualified immunity on Plaintiff's claims of excessive force. The law of this Circuit, however, precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich*, 280 F.3d at 1301, citing *Hudson*, 503 U.S. 1, and *Whitley*, 475 U.S. 312. Thus, a qualified immunity defense is not available when a plaintiff asserts the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Id.* at 1302; *see also Hudson,* 503 U.S. at 9-10; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). Accordingly, this court will consider whether Plaintiff's allegations that Defendant Shambray maliciously and sadistically used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

Viewing the complaint in the light most favorable to Plaintiff, the court concludes he has alleged facts which demonstrate a violation of his constitutional rights. "Having established a constitutional violation, the next step in the qualified immunity analysis usually

is to determine whether the right was clearly established. *See Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156. However, we have held that 'there is no room for qualified immunity' in Eighth and Fourteenth Amendment excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful. *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir.2002)." *Danley*, 540 F.3d at 1310. Under the facts presented by Plaintiff, which, as noted, the court must take as true for purposes of this pending motion, disputed issues of material fact exist regarding Defendant Shambray's need for and use of force. Thus, Defendant Shambray is not entitled to qualified immunity, *Id.*; *Skrtich*, 280 F.3d at 1301, and her request for summary judgment with respect to Plaintiff's excessive force claim is due to be denied.

*B. Defendant Forniss*

Plaintiff alleges that Defendant Forniss failed to conduct an investigation into his claim that Defendant Shambray subjected him to an excessive use of force. Plaintiff reiterates in his affidavit in opposition to Defendant Forniss's dispositive motion that this is his only allegation against the Warden. (*Doc. Nos. 1, 39, Jones Affidavit*). Warden Forniss states that correctional officials conducted an investigation into Plaintiff's allegation of assault. The undisputed evidence before the court reflects that Defendant Forniss received a copy of the investigative report. (*Doc. No. 15, Exhs. 1, 2*.) The fact that Defendant Forniss did not personally conduct the investigation, without more, fails to implicate any constitutional right to which Plaintiff is entitled. *See Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986) (holding that section 1983 requires a causal connection be demonstrated between *each*

17

defendant's actions, orders, customs, or policies and a deprivation of a plaintiff's federal rights in order to state a claim upon which relief can be granted); *see also Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." ). The court, therefore, concludes that Defendant Forniss is entitled to summary judgment.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment filed on behalf of Defendant Forniss *(Doc. No. 15)*, be GRANTED and the claim asserted against this Defendant be DISMISSED with prejudice;

2.  The motion for summary judgment filed on behalf of Defendant Shambray (*Doc. Nos. 22, 39*)  be GRANTED to the extent she has been sued in her official capacity;

3. The motion for summary judgment filed on behalf of Defendant Shambray with respect to  Plaintiff's  excessive force claim  (*Doc. Nos. 22, 39*),  be DENIED to the extent this defendant  is sued in her individual capacity;

4.  Defendant Forniss be DISMISSED as a party to this cause of action; and

5. Plaintiff's claim that Defendant Shambray used excessive force against him be set for an evidentiary hearing.

It is further

ORDERED that on or before **December 29, 2010** the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 15th day of December, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF  UNITED  STATES  MAGISTRATE  JUDGE